# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| PENNY RUMSEY, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>BIRCH COMMUNICATIONS, INC. d/b/a LIGHTYEAR WIRELESS, a Georgia corporation,<br><br>*Defendant*. | Case No.: 2:14-cv-12700<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Penny Rumsey ("Rumsey") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Birch Communications, Inc. d/b/a Lightyear Wireless ("Birch Communications") to stop its practice of making unsolicited telephone calls, specifically automated robocalls, to the telephones of consumers nationwide, and to obtain redress for all persons injured by its conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1. Defendant owns and operates a well-known telecommunications

1

company that offers a variety of communication-based products and services, including wireless telephone plans—which are sold under the brand name "Lightyear Wireless."

2. In an effort to sell its wireless telephone plans, Defendant uses a marketing structure—commonly referred to as "Multi-Level Marketing" or "MLM"—whereby members of its sales force are compensated for selling its services and also for recruiting other individuals to sell its services ("Lightyear Representatives" or "Representatives").

3. Unfortunately, in an attempt to sell Defendant's services and also recruit new Representatives, Defendant made, or had its Representatives (acting as its agents) make on its behalf and with its knowledge, unsolicited telemarketing calls to consumers that feature a prerecorded or artificial voice, commonly known as a "robocall."

4. Defendant and/or its agents failed to obtain prior express consent from consumers to make such robocalls, and therefore, have violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

5. The TCPA was enacted to protect consumers from unsolicited and repeated telephone calls exactly like those alleged in this case. Defendant made these calls despite the fact that neither Plaintiff, nor the other members of the putative Class, ever provided Defendant with their prior express consent to be

called. By making the phone calls at issue in this Complaint, Defendant caused Plaintiff and the other members of the Class actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited phone calls and the monies paid to their telephone carriers for the receipt of such calls.

6. In response to Defendant's unlawful conduct, Plaintiff filed the instant lawsuit seeking an injunction requiring Defendant to cease all unsolicited calling activities, as well as an award of statutory damages to the members of the Class as provided under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

7. Plaintiff Penny Rumsey is a natural person and citizen of the State of Michigan.

8. Defendant Birch Communications, Inc. is a corporation existing under the laws of the State of Georgia with its principal place of business located at 3060 Peachtree Street, Atlanta, Georgia 30305. Defendant Birch Communications is registered to conduct business with the Michigan Secretary of State as entity number 638036. Defendant Birch Communications conducts business throughout this District, the State of Michigan, and the United States.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. This Court has

personal jurisdiction over Defendant because it is registered to conduct business in this District, it conducts significant amounts of business transactions within this District, and because the wrongful conduct giving rise to this case occurred in, was districted to, and/or emanated from this District.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is registered to conduct business in this District, it conducts significant amounts of business transactions within this District, and because the wrongful conduct giving rise to this case occurred in, was districted to, and/or emanated from this District. Venue is additionally proper because Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

11. Defendant Birch Communications owns and operates a telecommunications company that sells, among other things, wireless telephone plans (under the brand name "Lightyear Wireless"[1]). In an attempt to increase its sales, Defendant uses a multi-level marketing structure, whereby members of its sales force are compensated for selling its services and also for recruiting other individuals to sell its services. (*See* Figure 1, on the following page, showing one

---

[1] In May 2013, Birch Communications purchased all of Lightyear Network Solutions, Inc.'s assets. In so doing, Birch Communications assumed control of the Lightyear MLM operation and has continued to support and make payments to the Lightyear Representatives. In the wake of the purchase, Birch Communications dissolved or deactivated the actual Lightyear corporate entities, but retained the Lightyear Wireless name for its own use.

of Defendant's MLM-based marketing materials contained on its website.)

**(Figure 1.)**

12.     Birch Communications incentivizes its existing Representatives to sell its services and recruit new Representatives by offering them (1) free cellular telephone service, and (2) monetary compensation each time one of the Representatives that they recruited, recruits a new Representative.

13.     Lightyear Representatives are paid directly by Defendant to carry out its sales, and in that capacity, act as its employees. Alternatively, Lightyear Representatives are direct agents of Birch Communications who are acting with actual and apparent authority in their capacity as Defendant's agents by (1) soliciting new Representatives, (2) selling Defendant's products and services, (3) using Defendant's brand name, and (4) indicating that they are employed by

5

Defendant. Additionally, Defendant is aware of its Representatives' conduct, directly assists them in that conduct, and thereby ratifies their conduct through its approval of their actions.

14.     In fact, Lightyear Representatives are prominently featured on Defendant's Lightyear Wireless website. (*See* Figure 2, showing a screenshot of an advertisement contained on Defendant's website promoting one of its Representatives who is known for making unsolicited telephone calls.[2])



**(Figure 2.)**

15.     Birch Communications also plays a very active role in the training, support and promotion of its Representatives. This includes Birch Communication employees communicating directly with Representatives, holding online and

---

[2]     *See* http://800notes.com/Phone.aspx/1-206-203-4163 (complaints regarding the Lightyear Representative pictured in Figure 2 above, Eric Bechtold, leaving robocall recordings "to get you to one of his websites for lightyear wireless service" and "[t]hey keep calling me - 4 times between 11 am and 1 pm. I called this number back. It is a recording about making money with a cell phone.")

6

telephonic meetings, providing promotional materials, and in general providing guidance in how best to promote the Lightyear Wireless MLM operation. In addition, Birch Communications provides and/or facilities the provision of consumer leads directly to the Lightyear Representatives in order to facilitate new Representative acquisition. (*See* Figure 3, showing a screenshot of the My Lightyear Leads resources webpage.)



**(Figure 3.)**

16.     Unfortunately, Defendant Birch Communications, through its Lightyear Representatives, has turned to a tried and true, albeit unlawful, method of reaching new customers: unsolicited telemarketing. Defendant even provides a "Lightyear Leads" training manual that describes how to telemarket new

7

prospects.[3]

17. Specifically, outbound telemarketing calls are placed to thousands of consumers nationwide that feature a pre-recorded message, commonly known as a "robocall," that solicits the call recipient to become a Lightyear Wireless Representative.

18. These calls contain advertisements describing the purported opportunity to make thousands of dollars per month through an "automated marketing system with unlimited ways to guarantee the fastest maximum success for your efforts." The robocalls either provide the Lightyear Wireless pitch directly on the call, or provide a number to call to receive more information. The pitch, regardless of the delivery method, is compromised of pre-recorded messages making, for example, statement substantially similar to the following:

- "Welcome, everyone, to our introduction call for Lightyear Wireless, the fastest growing company in the wireless industry . . . Our parent company is Birch Communications, an eighteen year-old federally licensed and regulated telecom. They have an A+ rating with the Better Business Bureau. They have been honored by The Inc 5000 as one of the fastest-growing privately held U.S. companies for seven years now. Our division, Lightyear Wireless, was created about five years ago. We have the security and backbone of a solid, time-tested company behind us.";
- "The Lightyear business model is based on, very simply, helping people save money using a product they can't live without. We have

---

[3] Lightyear Wireless, *Lightyear Leads Training Manual*, *available at* http://www.myvtmg.com/MyLightyearLead_TrainingManual.pdf (last accessed June 22, 2014).

no products to buy or stock, we have no auto-ship of overpriced products that you didn't need before you got on this call, and there is no billings or collections. And, no one does what Lightyear does! We help people eliminate their wireless bills so they get free service. Simply refer three people on service, which, of course, we're going to help you do, and never pay another wireless bill ever again.";

- "Because of our long-standing connections, we often get as many as 500,000 leads each week, and we've invested hundreds of thousands of dollars developing a fully-automated marketing and lead generation platform – basically, a simple "done-for-you" system for lead generation, using the power of e-mail, voice and texting.";

- "We have a Manager level, which is $75. The next level up is Senior Manager, which is $325; or, you can start at the top, which is where we make the most money, as a Regional Manager, for $525. But, whichever level you start at, once you refer three that are on service, you're going to eliminate your cell phone bill forever, which, of course, is going to save you a whole bunch of money.";

- "And, if you get started before the end of this month, Lightyear will actually bonus back to you your entire startup cost. Let me say that again: Get started before the end of the month, and Lightyear will bonus back your entire startup cost. No telecom company has ever done this before – it's incredible!"; and,

- "It's an income you can literally bank on every single month, month after month, just by referring three people to Lightyear. Not only does that eliminate your cell phone bill forever, but you're also going to put up to $650 in profit in your pocket immediately. And, this month, Lightyear is offering a very special bonus that will cover your startup costs. I'll be covering more on that in just a moment."

19. These calls are made at the direction of, or with the knowledge of, Birch Communications, and for the express purpose of selling cellular telephone service and recruiting new Representatives.

20. In making the calls at issue in this Complaint, Defendant and/or its agents utilized an automatic telephone dialing system ("ATDS"). Specifically, the

9

hardware and software used by to make the calls at issue had the capacity to generate and store random numbers, or receive and store lists of telephone numbers, and to dial those numbers, *en masse*, in an automated fashion without human intervention.

21. Neither Plaintiff nor the other members of the proposed Class ever provided their cellular telephone numbers to Defendant for the purpose of receiving telemarketing calls. Further, neither Plaintiff Rumsey, nor the other members of the putative Class, ever consented to receive these robocalls (or any other calls) at the telephone numbers called by Defendant and/or its agents.

**FACTS SPECIFIC TO PLAINTIFF RUMSEY**

22. On April 24, 2014, Plaintiff Rumsey received a telephone call on her cellular telephone from (618) 355-1197.[4] When Plaintiff answered, she heard a pre-recorded robocall message from a Lightyear Representative offering an opportunity to gain access to a MLM scheme related to cellular telephone service.

---

[4] Plaintiff's experience is corroborated by numerous other consumer complaints online. *See* 800notes.com/Phone.aspx/1-618-355-1197 ("Do Not Know Who This Is! Trying To Sell Me MLM!"; "wants me to call him back so he can tell me how to eliminate my cell phone bills 'for ever'" "It's a money making opportunity. In other words, a telemarketing call. I wish these folks would pay attention to the DNC list"; "Received 3 consecutive calls, on my cell, from this number.") *See also* callercomplaints.com/SearchResult.aspx?Phone=618-355-1197 ("I have been receiving multiple solicitation voice mail messages from this number daily! Make it stop!"; "Pause on the phone and then a message about listening to a way to make more money"; "telemarketer--and I am on the do not call registry--so why does he keep calling??")

The recording indicated that she should call (618) 355-7460 to listen to a second recording for more information. In order to understand who was calling her, Plaintiff called (618) 355-7460, which resulted in the playing of a recording substantially similar to that described in paragraph 18 above.

23. Plaintiff did not provide her cellular telephone number to Defendant or any of its agents, and as such, did not provide any form of consent to be called by Defendant or its agents.

24. As a result of Defendant's intrusive call, which adversely affected Plaintiff's right to privacy, Plaintiff suffered harm in the form of monies paid to her wireless carrier.

25. Defendant was and is aware that the above-described telephone calls were being made either by it directly, or made on its behalf, and that the telephone calls were being made to consumers who had not consented to receive them.

## CLASS ALLEGATIONS

26. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and a Class of similarly situated individuals defined as follows:

> All persons in the United States who (1) received a telephone call; (2) promoting an opportunity related to "Lightyear Wireless;" (3) that featured an artificial or pre-recorded voice; and (4) for which the caller had no record of prior express consent to make such call to the telephone number that received it.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) the legal representatives, successors, or assigns of any such excluded persons; (5) Plaintiff's counsel and Defendant's counsel.

27. **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has made telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendant's records.

28. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    (a) whether Defendant's conduct violated the TCPA;

    (b)    whether Defendant and/or its agents made calls featuring an artificial or pre-recorded voice;

    (c)    whether Defendant and/or its agents systematically made phone calls to persons who did not previously provide Defendant and/or its agents with their prior express consent to receive such phone calls; and

    (d)    whether Class members are entitled to treble damages based on the willfulness of Defendant's conduct.

29.    **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct and unsolicited telephone calls.

30.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

31.    **Policies Generally Applicable to the Class:** This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the

Class members, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

32. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
### (On behalf of Plaintiff and the Class)

33. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

34. Defendant and/or its agents made unsolicited and unwanted telemarketing calls to the telephone numbers belonging to Plaintiff and the other members of the Class without their prior express consent.

35. Defendant and/or its agents made unsolicited telemarketing calls to the telephone numbers belonging to Plaintiff and the other members of the Class using a prerecorded or artificial voice, more commonly known as a "robocall."

36. By making, or having made on its behalf, unsolicited robocalls utilizing an artificial or prerecorded voice to Plaintiff's and the Class's telephones without prior express consent, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B). As a result of Defendant's unlawful conduct, Plaintiff and the other members of the Class suffered actual damages in the form of monies paid to receive unsolicited calls and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in statutory damages for each violation of the TCPA.

37. Should the Court determine that Defendant's misconduct was willful and knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount

of statutory damages recoverable by Plaintiff and the other members of the Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Penny Rumsey, individually and on behalf of the Class, prays for the following relief:

1. An order certifying the Class as defined above, appointing Plaintiff Penny Rumsey as the Class Representative, and appointing her counsel as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendant to cease all unsolicited calling activities, and otherwise protecting the interests of the Class;

4. An award of reasonable attorneys' fees and costs; and

5. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

        Respectfully submitted,

        **PENNY RUMSEY**, individually and on behalf of all others similarly situated,

Dated: July 9, 2014        By: /s/ Ari J. Scharg
                                    One of Plaintiff's Attorneys

        Ari J. Scharg
        ascharg@edelson.com
        John Ochoa*
        jochoa@edelson.com

Mark Eisen*
meisen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Henry M. Scharg – P28804
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: 248.596.1111
Fax: 248.671.0335

Stefan Coleman*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
201 South Biscayne Boulevard, 28th Floor
Miami, Florida 33131
Tel: 877.333.9427
Fax: 888.498.8946

*Admission to be sought.